UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KHALIL WILLIAMS, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 2:17-cv-00468-ACA |
| } | |
| HOUSING OPPORTUNITIES FOR } | |
| PERSONS WITH } | |
| EXCEPTIONALITIES, } | |
| } | |
| Defendant. } | |

## MEMORANDUM OPINION

In this employment discrimination action, Plaintiff Khalil Williams claims that his former employer, Defendant Housing Opportunities for Persons with Exceptionalities ("HOPE"), terminated his employment because he is African-American. Mr. Williams asserts Title VII and 42 U.S.C. § 1981 race discrimination claims against HOPE.

Before the court is HOPE's motion for summary judgment. (Doc. 16). The parties have fully briefed the motion. (Docs. 17, 19, 20). For the reasons explained below, the court GRANTS the motion.

### I. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A "material fact" is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); *see Anderson*, 477 U.S. at 252 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.").

The court views the evidence in the light most favorable to the non-moving party. *Baas v. Fewless*, 886 F.3d 1088, 1091 (11th Cir. 2018). The court "may not weigh conflicting evidence or make credibility determinations of its own." *FindWhat Inv'r Grp.*, 658 F.3d at 1307. "If the record presents disputed issues of fact, the court may not decide them; rather, it must deny the motion and proceed to trial." *Id.* at 1307.

## II. BACKGROUND

Mr. Williams is African-American. (Doc. 18-1, p. 59). He worked for HOPE on two separate occasions. HOPE Executive Director Debra Sokol originally hired Mr. Williams in 2000. (Doc. 18-1, p. 5). Mr. Williams left HOPE in 2006 to pursue other career opportunities. (Doc. 18-1, p. 4). Ms. Sokol hired Mr. Williams again in 2011, and Mr. Williams worked for HOPE until May 2016. (Doc. 18-1, pp. 5-6; Doc. 18-3, p. 6).

When he returned to HOPE in 2011, Mr. Williams worked as a Direct Care Provider at a group home that HOPE operated for three autistic and mentally challenged adults. (Doc. 18-1, p. 8). As a Direct Care Manager, Mr. Williams assisted the residents with daily activities, including household chores, personal grooming, meal preparation, and transportation to social activities and doctor's appointments. (Doc. 18-1, pp. 8, 26). Mr. Williams also was Medication Administration Certified (MAC) which meant that he could administer medication to the group home residents. (Doc. 18-1, p. 7).

Mr. Williams was regularly scheduled to work at the group home on Friday evenings from 10:00 p.m. until 8:00 a.m. and on Saturday and Sunday evenings from 8:00 p.m. until 8:00 a.m. (Doc. 18-1, p. 7). When he was on duty, Mr. Williams was the only HOPE staff person at the group home. (Doc. 18-1, p. 8).

Ms. Sokol was Mr. Williams's supervisor during both periods of employment. (Doc. 18-1, p. 5). Mr. Williams received positive performance reviews and was not

3

subject to disciplinary action or any kind of adverse performance review. (Doc. 18-1, p. 8). Mr. Williams "had no major issues" with Ms. Sokol before HOPE terminated his employment. (Doc. 18-1, p. 7).

Mr. Williams believes that his relationship with Ms. Sokol suffered after he performed a side job for Ms. Sokol. (Doc. 18-1, pp. 21, 25). Sometime shortly before his employment with HOPE ended, Ms. Sokol hired Mr. Williams to repaint the deck on her home. (Doc. 18-1, p. 21). According to Mr. Williams, Ms. Sokol told him that he could not use the restroom inside her house while he was working on the deck, but he could go to the bathroom outside. (Doc. 18-1, p. 21). Mr. Williams ended up driving to a nearby McDonald's to use the restroom. (Doc. 18-1, p. 82).

After Mr. Williams completed the deck project, Ms. Sokol noticed that Mr. Williams had not painted the cracks between the deck boards. (Doc. 18-1, pp. 22-23). Mr. Williams offered to paint between the deck boards for an additional $100.00. (Doc. 18-1, p. 22). Ms. Sokol declined the offer, and she paid Mr. Williams the full amount to which they originally agreed for the job, even though she considered the job incomplete. (Doc. 18-1, pp. 22-23; Doc. 18-2, p. 9).

On Wednesday, May 4, 2016, Ms. Sokol called Mr. Williams and asked him to cover a shift for another employee on the evening of Thursday, May 5, 2016. (Doc. 18-1, pp. 8-9; Doc. 18-2, pp. 19-21). Mr. Williams told Ms. Sokol that he could not work the shift because he planned to attend his graduation from trade school that evening. (Doc. 18-1, p. 9). Mr. Williams alleges that Ms. Sokol told him that if he

did not appear for the Thursday evening shift, then he should not come back to work. (Doc. 18-1, p. 10). Specifically, he testified that Ms. Sokol said, "Either you come in or don't come back." (Doc. 18-1, p. 10). Ms. Sokol testified that after Mr. Williams told her he could not work because of graduation, she "told him congratulations and moved on." (Doc. 18-2, p. 21). In addition, Ms. Sokol testified that Mr. Williams was not required to work on Thursday, May 5, 2016 because he was graduating. (Doc. 18-2, p. 36).

According to Mr. Williams, Ms. Sokol called him on May 5, 2016 and told him that when he was hired, Mr. Williams signed paperwork agreeing to work overtime if he was available. (Doc. 18-1, p. 31). Mr. Williams asked to see the paper. (Doc. 18-1, p. 10). Ms. Sokol denied his request and told Mr. Williams that he was "no longer welcome at this office." (Doc. 18-1, p. 10). Then, Ms. Sokol told Mr. Williams "to come on over and we'll read the paper." (Doc. 18-1, p. 10).

When Mr. Williams arrived at the office, Ms. Sokol suggested that they go in the kitchenette to read the paper. (Doc. 18-1, p. 11). When Mr. Williams and Ms. Sokol got to the kitchenette, Mr. Williams "dropped [his] head and let [Ms. Sokol] start to read." (Doc. 18-1, p. 11). Then, the following exchange occurred:

> When she started to read the paper, she said if available, can you work overtime? That's when I said, Ms. Deborah, we need to stop right there? Stop? I said yes, ma'am. I said the paper specifically says if available, and I have a legitimate excuse why I'm not available. Okay. After that, that's when she cursed me. She said, I can't stand your black ass. I called her name, Ms. Deborah. Okay. After I said Ms. Deborah, that's when she hauled off and went berserk. . . .

5

(Doc. 18-1, pp. 11-12). Mr. Williams and Ms. Sokol then argued for two or three minutes about whether Ms. Sokol would give Mr. Williams a copy of the paperwork. (Doc. 18-1, p. 13). Ms. Sokol slammed a book on the ground. (Doc. 18-1, p. 13). Ms. Sokol picked up the book and said, "I don't give a damn about your damn kids." (Doc. 18-1, p. 14). Ms. Sokol told Mr. Williams to "get out of here. Get out of this office." (Doc. 18-1, p. 14). Then, Ms. Sokol ran in her office, slammed and locked her door, and got under her desk. (Doc. 18-1, p. 14).

Mr. Williams had no communication with anyone at HOPE after he left Ms. Sokol's office on May 5, 2016. (Doc. 18-1, pp. 14-15). Mr. Williams did not report for his scheduled shifts on Friday, May 6, 2016 or the following Saturday and Sunday. (Doc. 18-1, p. 15). He contends that he did not report to work because he believed that Ms. Sokol had fired him. (Doc. 18-1, p. 15).

About a week later, Mr. Williams picked up his last pay check from the payroll service and returned his key to the group home. (Doc. 18-1, p. 15). HOPE hired an African-American employee to replace Mr. Williams. (Doc. 18-2, pp. 22-23; Doc. 18-3, pp. 4-5).

### III. DISCUSSION

Mr. Williams alleges that HOPE discriminated against him because of his race in violation of Title VII and 42 U.S.C. § 1981. The court analyzes Mr. Williams's Title VII and § 1981 race discrimination claims together under the same framework.

*Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010) ("This Circuit has routinely and systematically grouped Title VII and § 1981 claims for analytic purposes."); *Standard v. A.B.E.L. Servs.,* 161 F.3d 1318, 1330 (11th Cir. 1998) ("Both of these statutes have the same requirements of proof and use the same analytical framework, therefore we shall explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well.").

"A plaintiff may prove a claim of intentional discrimination through direct evidence, circumstantial evidence, or through statistical proof." *Rioux v. City of Atlanta*, 520 F. 3d 1269, 1274 (11th Cir. 2008). Where, as here, a plaintiff relies on circumstantial evidence to establish discriminatory intent, a district court may use the *McDonnell Douglas* analytical framework to evaluate the sufficiency of the plaintiff's evidence. *Flowers v. Troup Cty., Ga. School Dist.*, 803 F.3d 1327, 1335-36 (11th Cir. 2015). Under this burden-shifting framework, "a plaintiff first must make out a prima facie case of discrimination that 'in effect creates a presumption that the employer unlawfully discriminated against the employee.'" *Flowers*, 803 F.3d at 1336 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). If a plaintiff presents a prima facie case, then the burden shifts to the defendant to articulate a non-discriminatory basis for the employment action at issue. If the defendant carries this light burden, then the burden returns to the plaintiff to prove that the defendant's stated reason for its conduct is pretext for intentional discrimination. *Flowers*, 803 F.3d at 1336.

Although it is one tool for examining evidence of discriminatory intent, "'the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion' in Title VII cases." *Flowers*, 803 F.3d at 1336 (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). "The critical decision that must be made is whether the plaintiff has 'create[d] a triable issue concerning the employer's discriminatory intent.'" *Flowers*, 803 F.3d at 1336 (quoting *Lockheed-Martin Corp.*, 644 F.3d at 1328). A convincing mosaic of circumstantial evidence may be sufficient to allow a jury to infer that discriminatory intent motivated an employment decision. *Lockheed-Martin Corp.*, 644 F.3d at 1328. "Whatever form it takes, if the circumstantial evidence is sufficient to raise 'a reasonable inference that the employer discriminated against the plaintiff, summary judgment is improper.'" *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1256 (11th Cir. 2012) (quoting *Lockheed-Martin Corp.*, 644 F.3d at 1328).

Here, the parties agree that the *McDonnell Douglas* framework is not appropriate for resolution of Mr. Williams's claims. (*See* Doc. 19, pp. 10-11; Doc. 20, pp. 3-4). Instead, Mr. Williams contends that summary judgment is improper for two reasons: (1) a factual dispute exists about whether HOPE actually terminated his employment, and (2) he has presented a convincing mosaic of circumstantial evidence from which a reasonable jury could infer racial animus. Neither argument is persuasive.

First, Mr. Williams submits that summary judgment is improper solely because there is a factual dispute about whether HOPE terminated his employment. (Doc. 19, pp. 11-12). Mr. Williams claims that Ms. Sokol terminated his employment. (Doc. 18-1, pp. 10, 15). Ms. Sokol testified that Mr. Williams's employment with HOPE ended because he did not report to work for scheduled shifts. (Doc. 18-2, pp. 21, 37). This factual dispute, standing alone, does not preclude summary judgment. For purposes of summary judgment, the court accepts as true Mr. Williams's testimony that Ms. Sokol fired him. But the analysis does not end there. To survive summary judgment, Mr. Williams must produce sufficient evidence from which a trier of fact may infer that HOPE terminated him because of his race. *See Ferguson v. Veterans Admin.*, 723 F.2d 871, 872 (11th Cir. 1984) ("To prevail under Title VII plaintiff would have to show discrimination by h[is] employer."); *see also Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) ("We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.").

Mr. Williams attempts to establish discriminatory intent through a mosaic of circumstantial evidence. (*See* Doc. 19, pp. 10-13). Mr. Williams argues that a reasonable jury could conclude that intentional race discrimination motivated HOPE's decision to terminate his employment based on three categories of circumstantial evidence: (1) Ms. Sokol's statement, "I cannot stand your black ass," (2) Mr.

Williams's strong work history coupled with the absence of an articulated reason for termination, Ms. Sokol's testimony that Mr. Williams stopped showing up for work, and Ms. Sokol's admission that Mr. Williams was not obligated to work an extra shift, and (3) Ms. Sokol's refusal to allow Mr. Williams to use the restroom inside her home while he painted her deck. Mr. Williams's evidence falls short.

Ms. Sokol's comment on Thursday, May 5, 2016, that she "can't stand [Mr. Williams's] black ass" is relevant circumstantial evidence. Construing the facts in the light most favorable to Mr. Williams, Ms. Sokol fired him either on Wednesday May 4, 2016 when she told him to report to work the following day or to not "come back" or on Thursday May 5, 2016 when she told him to "get out" of the office. (Doc. 18-1, pp. 10, 14-15). Thus, Ms. Sokol made the racially offensive comment one day after she fired Mr. Williams or on the day she terminated his employment. Under either scenario, the comment is "probative as to whether [race] animus motivated the decision to terminate" Mr. Williams. *See Damon*, 196 F.3d at 1363 (manager's statement that he wanted to promote "aggressive, young men" immediately after one employee's termination and three months after another employee's termination was "a significant piece of circumstantial evidence" from which a jury could infer age animus); *Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1323 n.11 (11th Cir. 1998) ("[L]anguage not amounting to direct evidence, but showing some racial animus, may be significant" circumstantial evidence.).

Although suggestive of discriminatory animus, under the circumstances of this case, Ms. Sokol's comment does not support an inference of intentional race discrimination with respect to Williams's termination. In *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354 (11th Cir. 1999), the Eleventh Circuit reversed the trial court's decision to grant summary judgment in an age discrimination case because the Court concluded that the plaintiffs had presented sufficient circumstantial evidence of age animus. *Id.* at 1357, 1361-1366. In *Damon*, one of the pieces of circumstantial evidence that the plaintiffs proffered was a supervisor's comment that "what the company needed was aggressive young men . . . to be promoted." *Id.* at 1359. Regarding the comment, the Eleventh Circuit explained:

> Far from being a stray remark, the comment may evince probative evidence of the state of mind of the decision-maker at the time of Kanafani's termination. The comment also arguably suggests that Soto had an ageist preference for young managers. Given the substance, context, and timing of Soto's comment, if credited, we find it to be a significant piece of circumstantial evidence.

*Id.* at 1362. The Court of Appeals found that the comment was "probative as to whether age animus motived the decision to terminate" another plaintiff because "the remark (1) was allegedly made only three months after Damon was terminated, (2) immediately followed the termination of someone similarly situated to Damon and in the same protected class, and (3) came from the same decision-maker responsible for Damon's termination." *Id.* at 1363.

11

In *Damon*, the ageist comment was not the only piece of circumstantial evidence on which the plaintiffs relied. In addition to the comment, the plaintiffs presented evidence that the decisionmaker had "discriminatory animus towards older store managers under his direct supervision." *Id.* at 1361. Specifically, within a one-year period, the employer terminated or demoted four "older, highly experienced store managers" and replaced each of the employees with younger individuals. *Damon*, 196 F.3d at 1361. The plaintiffs in *Damon* also "offered evidentiary support by which a reasonable jury could conclude that the specific reasons for termination given by [the employer] were a pretext." *Damon*, 196 F.3d at 1363.

As explained in greater detail below, *see infra* pp. 14-18, unlike the *Damon* plaintiffs, Mr. Williams has offered no additional relevant circumstantial evidence from which a jury could infer discriminatory animus. Without this additional evidence, the court finds that Ms. Sokol's comment may be evidence of Ms. Sokol's underlying discriminatory attitude and racial bias generally, but the comment alone does not support an inference that HOPE terminated Mr. Williams because he is African-American.

The circumstances of this case are analogous to the facts in *Jones v. Bessemer Carraway Medical Center*, 151 F.3d 1321 (1998). In *Jones*, on petition for rehearing, the Eleventh Circuit found that a Title VII plaintiff failed to establish an inference that her employer terminated her because of her race. *Id.* at 1323. The plaintiff submitted, and the district court excluded from trial, evidence that one week before the plaintiff's

termination, her supervisor said, "You black girls make me sick" and "You black girls get away with everything." *Id.* at 1322-23, 1325. The Eleventh Circuit concluded that even if the district court erred in excluding the statements, the statements were insufficient to permit an inference that the plaintiff's termination was "more likely than not . . . based on an illegal discriminatory criterion." *Id.* at 1323. The Court of Appeals noted that there was no evidence that the supervisor's decisions "had historically demonstrated racial discrimination" or that another supervisor "had a history of racial statements or of racial discrimination in her decisions." *Id.* at 1323-24. Moreover, the Eleventh Circuit explained that:

> In this disciplinary discharge case, no direct evidence of discrimination was submitted at trial. No statistical evidence was presented. No evidence shows that, after Plaintiff was fired, she was replaced by a nonminority employee. No pattern-or-practice of discrimination was evidenced or attempted to be evidenced. And, most important, no similarly situated, nonminority employee was identified who was treated better than Plaintiff.

*Id.* at 1324. The record is similarly deficient here. Mr. Williams has offered no evidence demonstrating that HOPE replaced him with a nonminority. Mr. Williams has submitted no evidence that HOPE engaged in a pattern and practice of discrimination. Mr. Williams has not identified a similarly situated, nonminority employee who received more favorable treatment. To be clear, Ms. Sokol's comment is offensive and inappropriate in the workplace or any other setting. But, "without more there is nothing to suggest a causal connection between [Mr. Williams's] race and his termination." *Flowers*, 803 F.3d at 1338.

13

To carry his burden of establishing a question of fact regarding discriminatory intent, Mr. Williams argues that his reputable work history and inaccuracies, inconsistencies, or contradictions in HOPE's explanation for his termination establishes that racial discrimination was the real reason for the adverse employment action. Specifically, Mr. Williams submits that:

> Plaintiff's excellent work performance, the absence of any other articulated reason for termination, the falsity of Sokol's explanation that Plaintiff simply stopped showing up for work, and her admission that he was not obligated to work on the night of his graduation further support an inference of intentional discrimination.

(Doc. 19, p. 10). Mr. Williams has not articulated how this evidence supports an inference of intentional discrimination. *See Lockheed-Martin Corp.*, 644 F.3d at 1328 n. 25 ("An inference, is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact.") (internal quotation marks, citation, and alteration omitted).

The record supports Mr. Williams's contention that he was a good employee. Ms. Sokol testified that Mr. Williams "always showed up for his shift unless he requested off," and she received no complaints about his job performance. (Doc. 18-2, p. 15). Ms. Sokol gave Mr. Williams positive performance evaluations. (Doc. 18-1, p. 8). Mr. Williams worked for Ms. Sokol for 11 years, and with the exception of the disagreement that led to his termination, Ms. Sokol made no derogatory comments about his race, and she subjected him to no disciplinary action or reprimand. (Doc.

18-1, pp. 7-8). No reasonable juror could infer from this evidence that HOPE fired Mr. Williams because he is African-American.

Ms. Sokol testified that Mr. Williams's employment ended because "[h]e didn't show up" for his regularly scheduled shift the weekend of May 6-8, 2016. (Doc. 18-2, p. 21). Mr. Williams posits that this testimony is false. Whether Ms. Sokol's testimony is false is a credibility determination for the trier of fact not for the parties or the court. Again, for purposes of summary judgment, the court has viewed the evidence in the light most favorable to Mr. Williams and has concluded that HOPE terminated his employment. This factual dispute as to <u>why</u> he was terminated does not give rise to an inference of race discrimination. Neither does Ms. Sokol's testimony that Mr. Williams was not required to work on the night he had graduation. Through this evidence, Mr. Williams appears to contest the truthfulness of HOPE's justification for the adverse employment action. But in this case, HOPE has not articulated a basis for Mr. Williams's termination because it is HOPE's position that Mr. Williams abandoned his job. Therefore, there is no legitimate, non-discriminatory reason for Mr. Williams to rebut. Even if HOPE had proferred a race-neutral justification for Mr. Williams's termination and even if Mr. Williams had identified a contradiction in HOPE's asserted reason for his termination, this evidence would not assist Mr. Williams without other evidence suggesting "that discrimination was the real reason" for the adverse action. *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *St. Mary's Honor Ctr. v. Hicks*,

509 U.S. 502, 515 (1993)); *see also Flowers*, 803 F.3d at 1339 ("The burden placed on Title VII plaintiffs to produce additional evidence suggesting discrimination after contradicting their employer's stated reasons is not great, but neither is it nothing. Though we do not require the blindered recitation of a litany, we cannot ignore the failure to present evidence of discrimination.") (internal quotation marks and citation omitted).

Mr. Williams does not explicitly argue that Ms. Sokol's refusal to let him use the bathroom inside her home is circumstantial evidence of racial animus. (*See* Doc. 19, pp. 10-13). But Mr. Williams includes the incident in his statement of facts and states that the encounter is an example of another occasion when Ms. Sokol "engaged in racially offensive conduct." (Doc. 19, p. 9). Therefore, the court briefly addresses this evidence and explains why the evidence is not probative of discriminatory intent.

Ms. Sokol did not tell Mr. Williams that he could not use the restroom inside her house because he is African-American, and Mr. Williams has submitted no evidence demonstrating that Ms. Sokol allowed Caucasian individuals doing work at her house to use the restroom inside. Therefore, this evidence does not give rise to an inference of intentional race discrimination. In the absence of other evidence suggesting that Ms. Sokol prohibited Mr. Williams from using her restroom because he is African-American, a reasonable jury cannot infer discriminatory intent from this facially neutral act that is removed in time and place from the employment decision.

In sum, Mr. Williams has not presented sufficient circumstantial evidence that would allow a jury to infer that HOPE terminated his position because of his race. Therefore, HOPE is entitled to judgment as a matter of law on Mr. Williams's Title VII and § 1981 race discrimination claims.

Because Mr. Williams has not created a triable issue of fact concerning HOPE's discriminatory intent, Mr. Williams's Title VII and § 1981 claims fail as a matter of law. Thus, the court does not analyze HOPE's alternative argument that collateral estoppel bars Mr. Williams's § 1981 claim. (*See* Doc. 17, pp. 16-19).

## IV. CONCLUSION

For the reasons stated above, the court finds that there is no genuine issue of material fact and HOPE is entitled to judgment as a matter of law. Accordingly, the court **GRANTS** HOPE's motion for summary judgment. (Doc. 16). The Court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this July 31, 2018.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE